1  **BARNES & THORNBURG LLP**
   Mark Wallin (SBN 331915)
2  mwallin@btlaw.com
   Michael Witczak (SBN 329960)
3  Michael.witczak@btlaw.com
   2029 Century Park East, Suite 300
4  Los Angeles, CA 90067
   Telephone: (312) 214-4591
5
   **BARNES & THORNBURG LLP**
6  Ashley N. Lopeztello (SBN 329254)
   alopeztello@btlaw.com
7  655 West Broadway, Suite 1300
   San Diego, CA 92101
8  Telephone: (619) 321-5000

9  Attorneys for Defendants
   WK KELLOGG CO
10

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  JULIAN T. MOSLEY, an individual, | Case No. 25-CV-0629 |
| 15           Plaintiff, | **DEFENDANTS' PETITION FOR AND NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332, 1441, AND 1446** |
| 16       v. | |
| 17  WK KELLOGG CO and DOES 1-25, Inclusive, | *[Filed concurrently with Declaration of Jody Liggett, Declaration of Mark Wallin, Corporate Disclosure Statement, Certification of Interested Parties, and Civil Cover Sheet]* |
| 18           Defendants. | |
| 19 | |
| 20 | Action Filed:  December 18, 2024 |
| 21 | Trial Date:    None Set |

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND PLAINTIFF'S COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant WK Kellogg Co, ("Defendant") petitions the Court to remove this action from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California pursuant to 28 U.S.C. sections 1332, 1441, and 1446. Defendant makes this petition on the grounds that complete diversity of citizenship exists between Plaintiff Julian T. Mosley ("Plaintiff"), a citizen of California, and Defendant WK Kellogg Co., a citizen of Delaware and Michigan. Further, the amount in controversy exceeds $75,000, and the foregoing facts were also true when Plaintiff filed the Complaint.[1]

## I. THE STATE COURT ACTION

1. On December 18, 2024, Plaintiff filed a Complaint against Defendant, entitled *Julian T. Mosley v. WK Kellogg Co,* Los Angeles County Case No. 24STCV33549. A true and correct copy of the Complaint is attached as **Exhibit A**.

2. On December 24, 2024, Plaintiff served Defendant through its registered agent, the Summons, Complaint, Civil Case Cover Sheet, Notice of Case Assignment, Instructions for Handling Unlimited Civil Cases, Notice of Case Management Conference, and Alternative Dispute Resolution Package. True and correct copies of these documents are attached as **Exhibits A and B**.

## II. REMOVAL IS TIMELY

3. Once a Complaint has been served, the defendant must respond to the Complaint within 30 days of service. Cal. Civ. Proc. Code § 412.20. A defendant in a civil action has thirty days from the date that service of the summons and complaint

---

[1] Unless expressly stated otherwise, all facts alleged in this Petition and Notice of Removal are true now and were true when Plaintiff filed the Complaint.

is complete to remove the action to federal court. 28 U.S.C. § 1446(b).

4. As set forth above, Defendant was served on December 24, 2024. Because Defendant filed this removal within thirty days of December 24, 2024, removal is timely.

### III. REMOVAL IS BASED ON DIVERSITY AND NOT PURSUANT TO THE CLASS ACTION FAIRNESS ACT

5. As a threshold matter, Defendant does not seek to remove this case under the Class Action Fairness Act ("CAFA"), as the class size is far less than the 100 members required by the CAFA. (Declaration of Jody Liggett "Liggett Decl.," ¶ 5.)

6. Plaintiff identifies the class he seeks to represent as "all non-exempt employees currently or formerly employed by Defendant as either 1.) salaried exempt, or 2.) hourly non-exempt within the State of California from four years prior to the filing of this action from November 27, 2020, through the date of judgment." (Complaint, ¶ 2.) As defined, this class includes 31 class members. (Liggett Decl., ¶ 5.)

7. Thus, Defendant seeks to remove this action based on diversity jurisdiction.

### IV. COMPLETE DIVERSITY EXISTS BETWEEN THE PARTIES

#### A. Plaintiff Is a Citizen of California.

8. For diversity purposes, a natural person is a citizen of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place he or she resides with the intention to remain or to which he or she intends to return. *Kantor v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

9. Plaintiff is, and at all times relevant to this action was, a citizen of California with his principal place of residence in California. (Complaint, ¶¶ 12 and 22 ("At all relevant times, Plaintiff, who is over the age of 18, was and currently is a

citizen of California residing in the State of California […] Plaintiff performed his job duties working remotely from his home-based office in South Grand Avenue, Los Angeles, California."). *Heinz v. Havelock*, 757 F.Supp. 1076, 1079 (C.D. Cal. 1991) (so long as a plaintiff has not completed a move to another state, the plaintiff's domicile remains at the place of his or her last residence at the time a suit was filed). Therefore, Plaintiff is a citizen of California.

B. **Defendant is a Citizen of Delaware and Michigan.**

10. For removal purposes, if a party is a corporation, it is a citizen of both its state of incorporation and the state where its principal place of business is located. 28 U.S.C. § 1332(c)(1). A corporation's "'principal place of business' [as contained in section 1332(c)] is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1184 (2010). This is typically the place where the corporation "maintains its headquarters — provided that the headquarters is the actual center of direction, control, and coordination." *Id.*

11. Defendant is a corporation formed under the laws of Delaware. (Liggett Decl., ¶ 4.)

12. Defendant maintains a principal place of business, from where the majority of the company's officers direct, control, and coordinate the corporation's activities, in Battle Creek, Michigan. (Liggett Decl., ¶ 4.)

13. Therefore, Defendant is a citizen of Delaware and Michigan.

14. Because Plaintiff is a citizen of California, and Defendant is a citizen of Delaware and Michigan, complete diversity among the parties exists.[2]

IV. **THE JURISDICTIONAL MINIMUM IS SATISFIED**

---

[2] The citizenship of "doe" defendants is disregarded for removal purposes. 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."); *Soliman v. Phillip Morris, Inc.*, 311 F.3d 966 (9th Cir. 2002) (citizenship of fictitious defendants is irrelevant for removal purposes).

15.     As an initial matter, Defendant is only required to demonstrate that the named plaintiff meets the amount in controversy. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 933-935 (9th Cir., 2001) ("In a diversity class action, the Judicial Improvements Act of 1990 authorizes district courts to exercise supplemental jurisdiction over claims of unnamed members of the class, regardless of whether each unnamed member meets the amount-in-controversy jurisdictional requirement, as long as the named plaintiff meets the requirement.").

16.     This Court's jurictional minimum of an amount in controversy over $75,000 for the named Plaintiff is satisfied.[3]

17.     Plaintiff's complaint does not request a specific dollar amount of damages or penalties, or even a number of violations for which monetary relief could be precisely calculated. Indeed, Plaintiff's Complaint not only lacks specificity concerning the amounts Plaintiff seeks, but also sweepingly seeks relief on an unlimited basis for "all statutory and/or civil penalties provided by law." (Complaint at Prayer for Relief ¶ 3(iv).) Where, as here, a plaintiff's complaint is unclear or ambiguous as to the amount of damages or monetary relief sought, the U.S. Supreme Court held that, under "[28 U.S.C.] §1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Sys. Co., LLC v. Owens*, 574 U.S. 81, 88 (2014). Subsequent to *Dart*, the Ninth Circuit clarified the defendant's burden in removal cases, holding that "the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 963 (9th Cir. 2020) (quoting *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019).

18.     While the Complaint does not demand a specific dollar amount of

---

[3] Defendants discuss the allegations in Plaintiff's Complaint solely to demonstrate that the amount in controversy exceeds $75,000. In doing so, Defendants do not admit that Plaintiff is entitled to these damages or that Plaintiff will be able to recover on any of his causes of action.

monetary relief, Plaintiff does request:

    3.)(ii) [A] money judgment for emotional distress and mental pain, anguish and suffering, according to proof;
(iii) For punitive damages in an amount according to proof at the time of trial;
(iv) For an order imposing all statutory and/or civil penalties provided by law, including, but not limited to penalties for:

    a.) For the failure to provide rest periods and pay missed rest period premiums, compensatory, consequential, general, and special damages according to proof pursuant to Labor Code section 226.7;

    b.) For the failure to provide meal periods and pay missed meal period premiums, compensatory, consequential, general, and special damages according to proof pursuant to Labor Code sections 226.7 and 512 and the applicable Wage Order No. 4;

    c.) For the failure to maintain accurate employment records, penalties pursuant to Labor Code sections 226.3, 1174.5, and others that may be applicable;

    d.) For the failure to pay wages timely during employment, the unpaid balance of the compensation owed to Plaintiff […] and any applicable penalties owed to them pursuant to Labor Code section 204 and 210;

    e.) For the failure to pay all wages earned and unpaid at separation, statutory waiting time penalties pursuant to Labor Code sections 201 through 203, for Plaintiff […] in an amount equal to [his] respective daily wages multiplied by thirty days, according to proof;

    f.) For the failure to indemnify all necessary business expenditures, all unreimbursed business expenses, and interest thereon, that are owed, pursuant to Labor Code section 2802, and attorney fees, pursuant to Labor Code section 2802, subdivision (c);

4.) For an order awarding Plaintiff […] statutory penalties pursuant to Cal. Lab. Code §§ 203, 226(e), 1174.5 and 1199, according to proof at trial and interest on those amounts;

5.) For the violations of California's Unfair Competition Law, restitution to Plaintiff […] of all money and/or property unlawfully acquired by Defendant by means of any acts or practices declared by this Court to be in violation of Business and Professions Code sections 16600, 16600.1, 16600.5 and sections 17200 through 17210;

6.) For Prejudgment interest on all due and unpaid wages pursuant to Labor Code section 218.6 and Civil Code sections 3287 and 3289;

7.) On all causes of action for which attorneys' fees may be available, for attorneys' fees and costs as provided by Labor Code sections 218.5, 226, 1194, Code of Civil Procedure section 1021.5, and others as may be applicable;

8.) For any and all applicable statutory penalties, interest, and attorneys' fees

and civil penalties as provided under California Business and Professions Code §17200 — 17210 and §16600, 16600.1 or 16600.5;
[…]
10.) For any and all applicable statutory penalties, interest, and attorneys' fees and civil penalties as provided under California Business and Professions Code §§ 17200, 17206, 16600.5;
[…]
12.) For all costs of suit;
13.) For prejudgment and post-judgment interest as allowed…"
(Complaint, Prayer for Relief, pp. 46-48.)

19. Therefore, Plaintiff has stated causes of action under the Labor Code and the UCL for each of the violations alleged in his Complaint, and for the purposes of diversity jurisdiction, the amount in controversy includes the value of every remedy he could recover if he prevailed. *Gonzales v. CarMax Auto Superstores LLC*, 840 F.3d 644, 648-649 (9th Cir. 2016):

> We have defined the amount in controversy as the "amount at stake in the underlying litigation," [citation]; this includes any result of the litigation … that "entail[s] a payment" by the defendant. [Citation]. This amount includes, *inter alia*, damages … and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes.

20. The Ninth Circuit affirmed the *Gonzales* holding that the amount in controversy must include "*any* result of the litigation that entails *payment by defendant.*" *Sky-Med, Inc. v. Federal Aviation Administration*, 965 F.3d 960, 965 (9th Cir. 2020) (emphasis added). *See also, Hunt v. Washington State Apple Advertising Com'n*, 423 U.S. 333, 348 (1977) (amount in controversy includes cost of complying with injunction); *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-415, 417 (9th Cir. 2018) (amount in controversy when determining existence of diversity jurisdiction is the "amount at stake in the underlying litigation," regardless of the likelihood that plaintiff "will actually recover" that amount, and "encompasses all relief a court may grant on that complaint if the plaintiff is victorious").

21. Under the Labor Code and the UCL, if successful, the Plaintiff here is

entitled to actual wages due but unpaid, premium wages, statutory penalties, civil penalties, attorneys' fees, and injunctive relief. (Complaint, Prayer for Relief, pp. 46-48.) Where, as here, Plaintiff's complaint is vague as to damages and other monetary relief, but bases its claims for damages and other monetary relief on "regular" and "routine" violations of the Labor Code, Defendant may meet their burden of proving the amount in controversy using conservative estimates of the potential damages and other monetary relief. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007); *Salazar v. PODS Enterprises, LLC*, 2019 WL 2023726, at *3-4 (C.D. Cal. May 8, 2019).

22. <u>Overtime.</u> In this action, Plaintiff alleges that Defendant misclassified him as a salaried, exempt employee, "wrongfully depriv[ing him] of legal rights accorded non-exempt employees." (Complaint, ¶ 26)   More specifically, Plaintiff contends that while he worked approximately sixty (60) hours per week (Complaint, ¶ 27), he was "not ever compensated the requisite legal amount of 1.5 times [his] respective hourly rates of pay for time worked in excess of eight hours in a single shift or for more than forty hours in a work week." (Complaint, ¶ 145). Further, Plaintiff claims he was paid $3,596.15 bi-weekly. (Complaint, ¶ 22).

23. Employees are entitled to 1-1/2 times regular pay for working more than eight (8) hours in one day or more than forty (40) hours in one week. (Labor Code § 510.) Employees are entitled to double pay for work in excess of twelve (12) hours in one day or work in excess of eight (8) hours on the seventh day of a work week. (*Id*.) An employee bringing a private cause of action may recover the unpaid balance of overtime due plus interest, attorneys' fees and court costs. (Labor Code § 1194.)

24. Taking Plaintiff's bi-weekly salary and dividing it by 80 hours (40 hours per week), Plaintiff's hourly rate breaks down to approximately $44.95 per hour for regular time and $67.43 per hour for overtime. Plaintiff argues he should have been paid 20 hours of overtime per week, which would come out to $1,348.60 ($67.43 x 20 hours) additional he should have been paid per week in overtime.  Plaintiff worked

BARNES & THORNBURG LLP
ATTORNEYS AT LAW
CHICAGO

45919626.1

7

DEFENDANTS' PETITION AND NOTICE OF REMOVAL

for Defendant from September 11, 2023, to February 2, 2024, so approximately $26,972.00 ($1,348.60 x 20 weeks in about five months) in overtime, exclusive of interest and penalties, is at issue here.  (Complaint, ¶¶ 22 and 31).

25. <u>Missed Meal and Rest Break Violations.</u>  Plaintiff alleges that he "almost always" missed his meal and rest breaks "due to the non-stop voluminous demands of [his] daily workloads." (Complaint, ¶¶ 25, 28, 118).  Plaintiff also alleges he was "routinely impeded from taking a second meal break periods for shifts worked in excess of ten hours." (Complaint, ¶ 68).  Further, Plaintiff alleges that while he did not waive his meal breaks, due to the misclassification of his position, he was never compensated the extra hour of pay for the missed meal and rest breaks.  (Complaint, ¶ 120).

26. The damages for a missed meal or rest break are an extra hour of pay for each day a meal or rest period is not provided.  (Labor Code § 226.7(c).)

27. Conservatively estimating "almost always" and "routinely" as missing three meal periods per week and three rest breaks per week, and Plaintiff's average hourly wage as a West Market Execution Manager in California was $44.95, Plaintiff's damages for missed meal and rest breaks would be approximately $44.95 x 6 (3 missed meal breaks and 3 missed rest breaks per week) x 20 weeks employed = $5,394.00, exclusive of interest and penalties.

28. <u>Failure to Reimburse Necessary Business Expenses.</u>  Plaintiff alleges that he was "routinely required to use [his] personal cell phones, personal computers and internet and Wi-fi services throughout the workday in the routine and necessary discharge of [his] work- related job duties." (Complaint, ¶ 160).  He further alleges that he was not reimbursed for the use of his personal cell phone, computer, and internet for work purposes.  (*Id.*)

29. The damages for failing to indemnify employees for necessary business expenses are the expenses plus interest from the day the expenses were incurred and attorneys' fees.  (Labor Code § 2802(b).)

30. Although Plaintiff has not identified the costs he spent for his cell phone, computer, and internet, Defendant believes $200/month is a reasonable estimate for these items, totaling $1,000 ($200.00 x 5 months worked), exclusive of interest, penalties, and attorneys' fees.

31. <u>Failure to Timely Pay Wages.</u> Plaintiff alleges that "Defendant failed to fully and accurately compensate Plaintiff for all of the hours [he] actually worked." (Complaint, ¶ 135.)

32. The damages for failure to timely pay wages are the past due wages plus interest, attorneys' fees, and costs. (Labor Code §§ 218, 218.5, 218.6, 1194.)

33. <u>Inaccurate Pay Stubs.</u> Plaintiff alleges that he was employed by Defendant from September 11, 2023, to February 2, 2024, for a total of approximately five months (or 20 weeks). (Complaint, ¶¶ 22 and 31).

34. The damages for issuing an inaccurate pay stub are $50 for the first violation and $100 for each subsequent violation, up to a maximum of $4,000, plus attorneys' fees. (Labor Code § 226(e)(1).)

35. Plaintiff received bi-weekly paychecks (Complaint, ¶ 22), and assuming each paycheck contained a purported inaccuracy in violation of the Labor Code, his damages would be $50 + ($100 x 9 paychecks), for a total of $950, plus attorneys' fees.

36. <u>Attorneys' Fees.</u> The amount in controversy also includes attorneys' fees that are authorized by statute. (*See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007); *Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005)* ("The amount in controversy includes the amount of damages in dispute, as well as attorney's fees, if authorized by statute ….") (inside quotes and citations omitted).) Here, as noted above, numerous Labor Code statutes at issue in this case allow for attorneys' fees. For example, the statute assessing damages for overtime violations, Labor Code § 1194, provides: "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to

recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Similarly, Labor Code § 218.5 permits an award of attorneys' fees to the prevailing party "[in] any action brought for the nonpayment of wages …."

37. Moreover, the measure of such fees for determining the amount in controversy "should be the amount that can reasonably be anticipated at the time of removal, not merely those [fees] already incurred." *Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1035 (N.D. Cal. 2002).

38. As other courts have noted, employment actions often "require substantial effort from counsel." *Id.* A typical hourly rate for employment cases in district courts of California, such as the Central District, is approximately $300 per hour. *See Casey v. ACE Cash Express, Inc.*, 2014 WL2468344, at *5 (C.D. Cal. May 30, 2014). At a relatively low billing rate of only $300 per hour, an attorney would only have to spend 250 hours to reach $75,000 in attorneys' fees. An attorney in just a single-plaintiff employment action is generally more likely than not to expend over 250 hours between discovery, motion practice (including summary judgment and other pretrial motions), trial preparation, trial, and other case-related activity. (Declaration of Mark Wallin (Wallin Decl.,) ¶¶ 4-5, Exh. C.) Accordingly, to litigate this case through trial at the typical hourly rate for employment cases in this district, it is reasonable to anticipate that Plaintiff's attorneys' fees will be at least $75,000 (250 hours x $300 per hour).

39. <u>Emotional Distress Damages</u>. Plaintiff seeks an award of emotional distress damages. (Complaint, Prayer for Relief, pp. 46-48.)

40. Emotional distress damages are properly considered in calculating the amount in controversy. *See Simmons, supra*, 209 F.Supp.2d at 1031-35 (finding that the plaintiff's alleged income loss of only $25,600 at the time of removal, included with unspecified amounts for medical expense damages, emotional distress damages, punitive damages, and attorneys' fees anticipated to incur through trial, satisfied the

amount in controversy requirement).

41. While Plaintiff does not state a specific amount of emotional distress damages that he is seeking, "the vagueness of plaintiff's pleadings with regard to emotional distress damages should not preclude the court from noting these damages are potentially substantial." *Richmond v. Allstate Ins. Co.*, 897 F.Supp. 447, 450 (S.D. Cal. 1995) (plaintiff's failure to make explicit demands did not prevent satisfaction of the amount in controversy); *Bennett v. Alaska Airlines, Inc.*, 2014 WL1715811, at *3 (C.D. Cal. 2014) (removing defendant may establish the amount in controversy by reference to jury verdicts in comparable cases).

42. Further, while Plaintiff's wage and hour claims are likely not eligible for emotional distress damages, Plaintiff's fraudulent concealment claim is. See *Quinn v. McCoy*, 2005 WL 995555.

43. An examination of jury awards shows that emotional distress damages in employment actions, and specifically for fraudulent concealment claims, as alleged here (Complaint, ¶¶ 167-171), are often sufficient, in and of themselves, to satisfy the amount in controversy requirement See, e.g., *Susan Bradford and Lavona Stanley v. Dirk Winter*, 2009 WL 3125239 (awarding a $75,000 emotional distress award in a single-plaintiff fraudulent concealment case where the employer moved its assets to avoid paying plaintiff a settlement for a sexual harassment and retaliation case).

44. Based on this, Plaintiff's claims for emotional distress damages alone put the amount in controversy in this matter at or over $75,000.

45. <u>Punitive Damages.</u> Plaintiff seeks an award of punitive damages. (Complaint, ¶¶ 47 and 171.)

46. Punitive damages are also included when determining the amount in controversy. *Davenport v. Mutual Ben. Health & Acc. Ass'n*, 325 F.2d 785 (9th Cir. 1963); *Gibson*, supra, 261 F.3d at 945 ("It is well established that punitive damages are part of the amount in controversy in a civil action.").

47. California law does not provide any specific monetary limit on the

amount of punitive damages which may be awarded under Civil Code section 3294, and the proper amount of punitive damages under California law is based on the reprehensibility of the defendant's misdeeds. *Boyle v. Lorimar Productions, Inc.*, 13 F.3d 1357 (9th Cir. 1994). An examination of jury awards shows that punitive damages awards alone in these types of wage and hour cases often exceed the $75,000 amount in controversy requirement. *See, e.g., Ortega v. Carson Wild Wings LLC*, 2020 WL 1812491 (Los Angeles Superior Court) ($100,000 award of punitive damages in a wage and hour case).

48. Therefore, Plaintiff's claims for punitive damages alone put the amount in controversy above the jurisdictional minimum of this Court.

49. <u>Total Claimed Damages.</u>  While the Complaint does not allege a damage amount, removal is proper as it is more likely than not that the value of Plaintiff's claims exceeds $75,000 based on the allegations in the Complaint. *See Sanchez, supra,* 102 F.3d at 404; *see also Lucett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).

50. In sum, the total amount in controversy is at least $259,314,[4] well above the $75,000 jurisdictional minimum, as demonstrated below.

| Type of Damages | Amount in Controversy |
|---|---|
| Past Wages, Statutory Penalties, and Premium Wages Under the Labor Code | $34,316+ |
| Attorneys' Fees | $75,000+ |
| Emotional Distress | $75,000+ |
| Punitive Damages | $75,000+ |
| **Total** | **$259,316+** |

---

[4] Notably, this amount does not take into account that "At the appropriate time, absent action by the LWDA or the Division of Labor Standards Enforcement ("DLSE"), Plaintiff will file an amended complaint seeking all recoverable penalties for Labor Code violations as permitted and proscribed by the PAGA." (Complaint, ¶ 108.)  Indeed, this will raise the amount in controversy, as PAGA holds its own penalties for the Labor Code violations alleged here.

## V. THE REQUIREMENTS OF 28 U.S.C. SECTION 1446 HAVE BEEN SATISFIED

51. In accordance with 28 U.S.C. section 1446(a), this Notice of Removal is filed in the District Court of the United States in which the action is pending.

52. This Court is the proper venue because it is in the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

53. In accordance with 28 U.S.C. section 1446(a), this Notice of Removal is accompanied by **Exhibits A and B**, which are copies of all process, pleadings, and orders served on Defendant. (Wallin Decl., ¶¶ 6-7, Exhs. A and B.)

54. In accordance with 28 U.S.C. section 1446(b), Defendant's Notice of Removal was filed within thirty days after completion of the initial service on Defendant, which was on December 24, 2024.

55. In accordance with 28 U.S.C. section 1446(d), Defendant will give written notice of the original removal of this action to Plaintiff via counsel and will file a copy of that Notice with the Los Angeles County Superior Court.

## VI. CONCLUSION

56. Because jurisdiction is proper under 28 U.S.C. section 1332 (diversity), Defendant respectfully requests that this Court exercise its removal jurisdiction over this action.

57. If this Court has any questions regarding the propriety of this Notice of Removal, Defendant respectfully requests that it issue an Order to Show Cause, so that Defendant may have an opportunity to address such questions.

Dated: January 23, 2025         **BARNES & THORNBURG LLP**

By: _/s/ Mark Wallin_
Mark Wallin
Michael Witczak
Ashley N. Lopeztello

Attorneys for Defendant WK Kellogg Co